# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-24171

MOTOROLA MOBILITY LLC, AND
LENOVO (BEIJING) LIMITED

      Plaintiffs,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

      Defendants.

_____/

## COMPLAINT

Plaintiffs, Motorola Mobility LLC ("MOTOROLA") and Lenovo (Beijing) Limited ("LENOVO"), (collectively, "Plaintiffs"), by and through undersigned counsel, hereby sue Defendants, the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A [1] (collectively, "Defendants"). Defendants are promoting, selling, offering for sale, and/or importing goods into the United States that infringe Plaintiffs' trademarks, within this district, through various Internet-based e-commerce stores using the seller identities set forth on Schedule A (the "Seller IDs"), and Plaintiffs allege as follows:

---

[1] Plaintiffs intend to file a motion to seal the Schedule A.

## INTRODUCTION

1.     This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' trademarks, which are covered by U.S. Trademark Registration Nos. 717,485, 1,674,103, 1,680,185, 2,190,864, 2,193,629, 3,402,839, and 3,477,883 (the "MOTOROLA Trademarks"), and 5,388,737 (the "LENOVO Trademark"), (collectively, the "MOTOROLA and LENOVO Trademarks" or "Plaintiffs' Trademarks").

2.     Plaintiffs' Trademarks are valid, subsisting, and in full force and effect. The true and correct copies of the federal trademark registration certificates for the MOTOROLA Trademarks are attached as **Exhibit 1.** The true and correct copy of the federal trademark registration certificate for the LENOVO Trademark is attached as **Exhibit 2.**

3.     Defendants are improperly advertising, marketing, and/or selling unauthorized and noncompliant products by reference to marks identical or substantially identical to Plaintiffs' Trademarks (the "Counterfeit Products").

4.     Defendants have created numerous fully interactive commercial Internet stores operating under the online marketplace accounts (the "Defendant Internet Stores") and using the account names identified in Schedule A (collectively, the "Defendants").

5.     Defendants design the online marketplace accounts to appear to be selling genuine Plaintiffs' genuine MOTOROLA AND LENOVO Products (the "MOTOROLA AND LENOVO Products"), while selling inferior imitations of such products.

6.     The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship

between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products.

8. As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of their exclusivity of their intellectual property rights, as well as by and through consumer confusion, dilution, and tarnishment of their valuable trademarks, and, therefore, seek injunctive and monetary relief.

9. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10. In addition, each Defendant has offered to sell and ship and/or sold and shipped infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

11. This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

12. This Court has jurisdiction over the unfair deceptive trade practices claims in this action that arise under the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or

controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

13.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail themselves of the privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiffs in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this judicial District, for example:

a.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in this Judicial District, through accounts with online marketplace platforms such as Amazon.com ("Amazon"), DHgate.com ("DHgate"), eBay.com ("eBay"), Shein.com ("Shein"), and Walmart.com ("Walmart") (collectively, the "Marketplace Platforms") as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts that each Defendant operates ("Defendant Internet Stores"), uses to communicate with Defendants regarding their listings for Counterfeit Products

(as defined infra) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District).

b.      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

14.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) because Defendants have committed acts of trademark infringement in this Judicial District and conduct substantial business in this Judicial District.

## THE PLAINTIFFS

15.     Plaintiff MOTOROLA MOBILITY LLC is a Delaware limited liability corporation with its principal place of business in Chicago, IL.

16.     Plaintiff LENOVO (BEIJING) LIMITED is a Beijing, China limited company, with its principal place of business in Morrisville, NC.

17.     Plaintiffs are the registered owners of the following Plaintiffs' trademarks (attached as Exhibit 1 and 2), duly and legally issued by the U.S. Patent and Trademark Office:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 717,485 | MOTOROLA | 06/27/1961 |
| 1,674,103 |  | 02/4/1992 |

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 1,680,185 |  | 03/24/1992 |
| 2,190,864 | MOTOROLA | 09/22/1998 |
| 2,193,629 |  | 10/6/1998 |
| 3,402,839 | MOTO | 03/25/2008 |
| 3,477,883 |  | 07/29/2008 |
| 5,388,737 | Lenovo | 01/30/2018 |

## THE MOTOROLA PRODUCTS

18.     Plaintiff MOTOROLA specializes and has specialized in the manufacture and sale of cell phones, cell phone accessories, and batteries, including but not limited to the "Motorola Razr", "Motorola Edge", and "Motorola G" (the "MOTOROLA Products"). The MOTOROLA Products have acquired national and worldwide fame and recognition because of their modern and innovative designs.

19.     Plaintiff has been selling its products since as early as 1928. Starting in 1928 and continuing until the present day, Plaintiff has been the sole and official source of genuine MOTOROLA Products in the United States. Plaintiff sells MOTOROLA Products through its website, www.motorola.com, and through authorized online retailers.



*Exemplary Image of Plaintiff's Product Listing for Sale on Plaintiff's Website*
*(www.motorola.com) Incorporating Plaintiff's MOTOROLA Trademarks*

20.     Since at least 1961, the MOTOROLA Trademarks are and have been the subject of substantial and continuous marketing and promotion by MOTOROLA. MOTOROLA has and continues to widely market and promote the MOTOROLA Trademarks in the industry and to consumers. MOTOROLA's promotional efforts include—by way of example but not limitation— substantial print media, the MOTOROLA official website www.motorola.com, social media sites, television marketing, billboards, trade shows, and point of sale materials.

21.     The MOTOROLA Trademarks are distinctive and identifies the merchandise as goods from Plaintiff. The registrations for the MOTOROLA Trademarks constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use the trademark pursuant to 15 U.S.C. § 1057(b).

22.     Plaintiff's Trademarks qualify as a famous mark, as that term is used in 15 U.S.C.

§1125 (c)(1), and has been continuously used and never abandoned.

23.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Plaintiff's Products. Indeed, products bearing the MOTOROLA Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE LENOVO PRODUCTS

24.     Plaintiff LENOVO specializes and has specialized in the manufacture and sale of various technologies and products, including but not limited to laptops, desktops, workstations, monitors, accessories, and tablets (the "LENOVO Products"). The LENOVO Products have acquired worldwide fame and earned an international reputation for quality, reliability, and value.

25.     Plaintiff has been selling its products since as early as 1984. Starting in 1984 and continuing until the present day, Plaintiff has been the sole and official source of genuine LENOVO Products in the United state. Plaintiff sells LENOVO Products through its websites, www.lenovo.com, and through authorized online retailers.



*Exemplary Image of Plaintiff's Product Listing and Branding on Plaintiff's Website (www.lenovo.com) Incorporating Plaintiff's LENOVO Trademark*

26.     Since at least 2018, the LENOVO Trademark is and has been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the LENOVO Trademark in the industry and to consumers. For

example, Plaintiff promotes its LENOVO Products through substantial print media, the LENOVO official website www.lenovo.com, social media sites, television marketing, billboards, trade shows, point of sale materials, and other industry-common media.

27.     The LENOVO Trademark is distinctive and identifies the merchandise as goods from Plaintiff. The registration for the LENOVO Trademark constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use the trademark pursuant to 15 U.S.C. § 1057(b).

28.     Plaintiff's Trademark qualifies as a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1), and it has been continuously used and never abandoned.

29.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Plaintiff's Products. Indeed, products bearing the LENOVO Trademark are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

30.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

31.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

## THE DEFENDANTS' UNLAWFUL CONDUCT

32.     The success of the MOTOROLA and LENOVO Products has resulted in significant counterfeiting.

33.     Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites and marketplace listings on the Marketplace Platforms, including the Defendant Internet Stores, which were offering for sale, sell, and importing Counterfeit Products

to consumers in this Judicial District and throughout the U.S.

34.     Defendants have persisted in creating such online marketplaces and Internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the U.S. Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion. Websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

35.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine MOTOROLA and LENOVO Products.

36.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

37.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

38.     Plaintiffs have not licensed or authorized Defendants to use the MOTOROLA and LENOVO Trademarks. None of the Defendants are authorized retailers of genuine MOTOROLA and LENOVO Products.

39. On personal knowledge and belief, Defendants also deceive unknowing consumers by using without authorization the MOTOROLA and LENOVO Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MOTOROLA and LENOVO Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine MOTOROLA and LENOVO Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiffs also seek to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products into this Judicial District.

40. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states. And many Defendant Internet Stores use privacy services that conceal the owners' identity and contact information.

41. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Internet Store registration patterns, such as the ones used by Defendants, are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive

counterfeiting operation, and to avoid being shut down.

42.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.   For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

43.     In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

44.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

45.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

46.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take

---

[2] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites").

down demands sent by brand owners.[3]

47.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

48.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

49.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

50.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the MOTOROLA and LENOVO Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Florida over the Internet.

51.     Each Defendant Internet Store offers shipping to the U.S., including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell Counterfeit Products into the U.S., including Florida (in this Judicial District), which is likely to cause and has

---

[3] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm.

caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

52.     Defendants' use of the MOTOROLA and LENOVO Trademarks in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

53.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the MOTOROLA and LENOVO Trademarks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the MOTOROLA and LENOVO Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

54.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and the MOTOROLA and LENOVO Products.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING**
**(15 U.S.C. § 1114, et seq.)**

55.     Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–54 of this Complaint.

56.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered MOTOROLA and LENOVO Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MOTOROLA and LENOVO Trademarks are highly

distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' products provided under the MOTOROLA and LENOVO Trademarks.

57.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the MOTOROLA and LENOVO Trademarks without Plaintiffs' permission.

58.     Plaintiffs are the registered owners of the MOTOROLA and LENOVO Trademarks. The U.S. Registrations for the MOTOROLA and LENOVO Trademarks (Exhibit 1 and 2) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the MOTOROLA and LENOVO Trademarks and are willfully infringing and intentionally using counterfeits of the MOTOROLA and LENOVO Trademarks. Defendants' willful, intentional, and unauthorized use of the MOTOROLA and LENOVO Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

59.     As just one example, Defendants deceive unknowing consumers by using the MOTOROLA and LENOVO Trademarks without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:



*Exemplars of Counterfeit Product Sold by Defendant Internet Stores Infringing on Plaintiffs'*
*MOTOROLA and LENOVO Trademarks*

60.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

61.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion,

offering to sell, and sale of counterfeit MOTOROLA and LENOVO Products.

62.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known MOTOROLA and LENOVO Trademarks.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

63.     Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–54 of this Complaint.

64.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

65.     By using the MOTOROLA and LENOVO Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin, which is a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

66.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

67.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## THIRD CAUSE OF ACTION
## COMMON LAW UNFAIR COMPETITION

68.     Plaintiffs repeat and incorporate by reference herein their allegations contained in

paragraphs 1–54 of this Complaint.

69.     Plaintiffs have not licensed or authorized Defendants to use the MOTOROLA and LENOVO Trademarks, and none of the Defendants are an authorized retailer of genuine MOTOROLA and LENOVO Products.

70.     Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' MOTOROLA and LENOVO Trademarks.

71.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs in violation of Florida's common law of unfair competition.

72.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of counterfeit MOTOROLA and LENOVO Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

73.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by (i) using SEO tactics and social media to misdirect customers seeking MOTOROLA and LENOVO Products to Defendants' online marketplace accounts; (ii) using deceptive advertising practices within the text and metadata of the online marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

74.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names

and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

75.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

a.     using the MOTOROLA and LENOVO Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine MOTOROLA and LENOVO Product or is not authorized by Plaintiffs to be sold in connection with the MOTOROLA and LENOVO Trademarks;

b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine MOTOROLA and LENOVO Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the MOTOROLA and LENOVO Trademarks;

c.     committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.      further infringing the MOTOROLA and LENOVO Trademarks and damaging Plaintiffs' goodwill;

e.      otherwise competing unfairly with Plaintiffs in any manner;

f.      shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which use the MOTOROLA and LENOVO Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

g.      using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h.      operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the MOTOROLA and LENOVO Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine MOTOROLA and LENOVO Product or not authorized by Plaintiffs to be sold in connection with the MOTOROLA and LENOVO Trademarks.

2.      Entry of an Order that the Marketplace Platforms, including without limitation Amazon.com ("Amazon"), DHgate.com ("DHgate"), eBay.com ("eBay"), Shein.com ("Shein"), Walmart.com ("Walmart"), and any other online marketplace account through which Defendants are selling Counterfeit Products:

a.     disable and cease providing services for any accounts through which Defendants sell Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

b.     disable and cease displaying any advertisements used by or associated with Defendants in connection with their sale of Counterfeit Products; and

c.     take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3.     That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MOTOROLA and LENOVO Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4.     In the alternative, that Plaintiffs be awarded statutory damages of not more than $2,000,000 for each and every use of the MOTOROLA and LENOVO Trademarks and statutory damages of not less than $750 pursuant to 15 U.S.C. § 1117(c);

5.     That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

6.     Award any and all other relief that this Court deems just and proper.

Dated: September 12, 2025          Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Leigh Salomon*
Leigh Salomon (FL Bar No. 1054106)
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
Tel: (305) 357-8450
lsalomon@bsfllp.com

*Attorney for Plaintiffs MOTOROLA MOBILITY LLC, and LENOVO (BEIJING) LIMITED*